FILED
DISTRICT COURT OF GUAM
JUL -7 2005
MARY L.M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| REXIELITO J. GLORY,<br>Petitioner,<br>vs.<br>UNITED STATES OF AMERICA,<br>Respondent. | Criminal Case No. 01-00061<br>Civil Case No. 04-00017<br><br>ORDER |

Petitioner Rexielito Glory ("Glory") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion").[1] The Court deems the matter appropriate for decision without oral argument. FED.R. CIV. P. 78. After considering all the submissions, the Court DENIES Glory's motion in its entirety.

## BACKGROUND

On August 15, 2001, Glory pled guilty to one count of Distribution of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On December 12, 2001, the Court sentenced Glory to two hundred sixty-two (262) months imprisonment. The judgment of conviction was entered on the docket on December 19, 2001. In January 2002, the petitioner filed an appeal with the Ninth Circuit. On January 17, 2003, the appellate court affirmed Glory's conviction. *United States v. Rexielito J. Glory*, No. 02-10032 (9th Cir. January 17, 2003). Glory incarcerated and represented by counsel, brought this motion pursuant to 28 U.S.C. § 2255, requesting the Court to vacate his sentence. *See,* Docket Nos. 46 and 53.

---

[1] Glory filed his initial Motion via Attorney Howard Trapp on March 29, 2004. *See,* Docket No. 46. On April 27, 2005, Glory on his own, filed a supplemental pleading to include additional grounds in light of the newly decided case, *United States v. Booker*, 125 S.Ct. 738 (2005). *See,* Docket No. 53. The Court will construe Glory's subsequent filing as an addendum to the original. Both filings will be referred to collectively as the "motion."

## ANALYSIS

28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[2] *See, United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls into question a conviction's finality, collateral relief is an extraordinary remedy that should only be granted when a fundamental defect could have resulted in a complete miscarriage of justice, or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979).

*Glory* claims that he is entitled to relief for the following reasons: 1) his sentence was imposed in violation of the law, specifically by applying U.S.S.G. § 2D1.1(b)(4)(A) and (B) and § 3B1.1(c);[3] 2) the Court incorrectly applied the sentencing guidelines in determining his sentencing level by applying U.S.S.G. § 2D1.1(b)(4)(A) and (B) and § 3B1.1(c); 3) counsel at sentencing was ineffective for failing to object to the issues raised in one and two above, while appellate counsel was ineffective for failing to raise the issue in one above on appeal; and 4) his sentence was improperly enhanced in light of *United States v. Booker*, 125 S.Ct. 738 (2005).

**Procedural Bar**

Glory concedes that he failed to advance the instant claims in the District Court prior to judgment in the criminal case and failed to raise his objection to the application of U.S.S.G. § 2D1.1(b)(4)(A) and (B) on direct appeal. Claims not asserted previously, although available, are procedurally barred absent a showing of cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 166 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate

---

[2] The statute states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

[3] Glory was sentenced under the 1998 edition of the *United States Sentencing Commission Guidelines Manual*. Accordingly, any mention of the U.S.S.G. herein shall refer to that edition.

either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998).

As noted, Glory did not raise/object to the issue surrounding the application of § 2D1.1(b)(4)(A) and (B) before either the trial/sentencing court or appellate court. However, Glory alleges the reason he did not address it previously was due to ineffective counsel. *See, Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("[i]neffective assistance . . . is cause for a procedural default"). Accordingly the Court will consider Glory's § 2D1.1(b)(4)(A) and (B) claims in that context.

**Ineffective Assistance of Counsel Claims**.

To demonstrate ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner fulfills the first prong of the *Strickland* test by showing that "the behavior complained of falls below prevailing professional norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). An inquiry into counsel's conduct probes "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. In engaging in such an inquiry, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" especially where counsel's acts may be considered "'sound trial strategy.'" *Id.* at 689.

*Application of U.S.S.G. § 2D1.1(b)(4)(A) and (B)*. Glory contends that his trial and appellate counsel were ineffective for failing to object to or raise the issue regarding the Court's application of § 2D1.1(b)(4)(A) and (B)[4] in determining the appropriate offense level. Moreover, Glory maintains that the Court's application of § 2D1.1(b)(4)(A) and (B), imposing a two level enhancement, was contrary to law since he was not convicted of importation but of distribution of methamphetamine.[5]

---

[4] U.S.S.G. § 2D1.1(b)(4)(A) and (B) provide in pertinent part, "If (A) the offense involved the importation of . . . methamphetamine . . . and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels."

[5] The Court notes that Glory only contends that the conditions of § 2D1.1(b)(4)(A) are not met. He does not contest the fact that a reduction for "Mitigating Role" under U.S.S.G. § 3B1.2 does not apply in his case.

Glory's argument is without merit. The stipulated facts entered into between the government and Glory at the time of his plea and subsequently affirmed under oath in the plea colloquy contradict Glory's contentions. Glory admitted in the stipulated facts to being involved in and aiding three drug trafficking rings in importing methamphetamine from the Philippines into Guam. An excerpt of the stipulated facts states as follows:

> Between 1996 and March, 1999, [Glory] facilitated the importation and distribution of five (5) kilograms of ice financed by Mercader, Marquez and Fuller. In addition to using his employment to unload the ice, he also acted as a courier, actually carrying the ice into Guam [from the Philippines] aboard a Continental flight, and as a distributor, in that he would receive the ice from other LSG employees and deliver it to such people as Mercader, Marquez or Fuller designated to receive it . . . .

Plea Agreement at ¶ 7(c), Docket No. 11.

Glory was also informed of and agreed that U.S.S.G. § 1B1.2 applied in his case.[6] Glory further agreed in his plea agreement, that he "understands that the facts he stipulates to herein will be used, pursuant to [U.S.S.G. §] 1B1.2, in calculating the applicable guidelines level, even though the counts underlying this conduct may be dismissed."[7] *Id.* at ¶ 7. A sentencing judge must consider only conduct included in the plea agreement when selecting a guideline under § 1B1.2. *United States v. Crawford*, 185 F.3d 1024 (9th Cir.1999). The Court was required to use the importation guideline due to the stipulations in the plea agreement. If more serious conduct is "specifically established" by stipulations in a plea, then § 1B1.2(a) does require the district court to consider that conduct in selecting a guideline. *See, United States v. Saldana*, 12 F.3d

---

[6] U.S.S.G. § 1B1.2 provides in pertinent part:

(a) Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction . . . However, in the case of a plea agreement . . . containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two applicable to the stipulated offense.

(b) After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct).

(c) A plea agreement . . . containing a stipulation that specifically establishes the commission of additional offense(s) **shall** be treated as if the defendant had been convicted of additional count(s) charging those offense(s). (emphasis added).

[7] The application notes for this subsection of the guidelines explains this further, indicating "a factual statement or a stipulation contained in a plea agreement . . . is a stipulation for purposes of subsection (a) only if both the defendant and the government explicitly agree that the factual statement or stipulation is a stipulation for such purposes."

160 (9th Cir.1993) (requiring district court to consider under § 1B1.2(a) more serious conduct specifically established by plea agreement). Accordingly, Glory's contention that the guideline for importation was improperly applied, fails. And, his claim of ineffective assistance of counsel in this regard is without basis.

*Application of U.S.S.G. § 3B1.1(c)*. Glory claims that his counsel was ineffective at sentencing because he did not object to the application of § 3B1.1(c)[8] in determining the appropriate offense level. Moreover, Glory maintains that the Court's application of § 3B1.1(c), imposing a two level enhancement, was contrary to law since he was not an organizer, leader, manager or supervisor in any criminal activity.

The issue concerning whether or not the Court erred in determining Glory was a leader or organizer pursuant to § 3B1.1(c) was raised on direct appeal and denied. *United States v. Rexielito J. Glory*, No. 02-10032 (9th Cir. January 17, 2003). The Ninth Circuit found that Glory's claim "lacks merit because Glory admitted that he supervised and exercised authority over at least one other participant in the criminal activity." *Id.* (citing *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir. 2000)).

It is well settled law that § 2255 may not be invoked to relitigate questions which were raised on a direct appeal from the judgment of conviction. The mandate of an appellate court "is controlling as to matters within its compass." *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139 (1979)). Such a mandate forecloses the district court from reconsidering matters determined in the appellate court. *Id.* at 1502. Since the Ninth Circuit mandate affirmed this Courts application of a two level enhancement pursuant to § 3B1.1(c), this Court lacks the authority to reexamine the application under § 2255.[9] *See, e.g., United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir.1999) (decision on direct appeal "is binding"); *Odom v. United States*, 455 F.2d 159, 160 (9th Cir.1972) (when issue was decided on direct review "the judgment became final" and the matter decided cannot be litigated again on a § 2255 motion).

---

[8] U.S.S.G. § 3B1.1(c) provides in pertinent part, "Based on the defendant's role in the offense, increase the offense level as follows: (c) If the defendant was an organizer, leader manager, or supervisor in any criminal activity . . . , increase by 2 levels."

[9] Assuming *arguendo* that this court could review the matter, based on the stipulations present in ¶ 7 of the plea agreement this Court finds that the application of a two level enhancement was proper with respect to § 3B1.1(c).

1  Accordingly, the Court finds that the two level enhancement pursuant to § 3B1.1(c) was
2  proper based on Glory's admissions in the plea agreement. Since no error occurred, Glory's
3  claim of ineffective assistance of counsel in this regard is also without merit.

**Applicability of *Booker***

Finally, Glory claims that his sentence was unconstitutionally enhanced in light of the recent Supreme Court decision in light of *Blakely v. Washington,* 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S.Ct. 738 (2005). Glory's claim was final when *Blakely* was decided, so *Blakely* and by extension *Booker*, are applicable only if they apply retroactively to cases on collateral review.

Supreme Court holdings that create new rules apply to cases on collateral review only in limited circumstances. *Schriro v. Summerlin*, 124 S. Ct. 2519, 2552 (2004). New substantive rules generally apply retroactively because the risk is great that the defendant's conviction was based on conduct the law no longer makes criminal. *Id.* (citations omitted). Procedural rules, however, only apply retroactively if they fall into an extremely narrow "set of 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S. Ct. 1257, 1264 (1990)).

Glory's claim rests on recent Supreme Court cases holding that any fact relied upon to increase a sentence beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Booker*, 125 S.Ct. At 756; *Blakely*, 124 S. Ct. At 2543; *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000).

Nonetheless, *Booker* and its predecessors do not apply retroactively to cases on collateral review. The Supreme Court has strongly indicated that *Blakely* does not apply to cases on collateral review. In *Schriro v. Summerlin*, issued the same day as *Blakely*, the Court held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), does not apply retroactively to cases on collateral review. *Summerlin*, 124 S. Ct. At 2526. *Ring*, like *Blakely*, involved an extension of the Court's holding in *Apprendi. Id.* The Court held in *Ring* that aggravating factors relied on to impose the death penalty must be proved to a jury, not a judge. *Id.* at 2522. The Court in *Summerlin* reasoned that this new rule was procedural, not substantive, because it did not alter

the range of conduct subject to a particular punishment, but rather "altered the range of permissible methods" for determining the punishment. *Id.* at 2523. The Court further reasoned that it was not a "watershed rule" of criminal procedure because judicial fact finding is not likely to "so seriously diminish accuracy as to produce an impermissibly large risk of injustice." *Id.* at 2525.

Based on the Court's explicit holding in *Summerlin* that *Apprendi* and *Ring* do not apply retroactively to cases on collateral review, it follows that *Blakely* and *Booker*, also extensions of *Apprendi*, do not apply retroactively to cases on collateral review. *Id.* Justice O'Connor's dissent in *Blakely* recognized the Court's holding in *Summerlin* that "*Ring* (and *a fortiori Apprendi*) does not apply retroactively on habeas review." 124 S. Ct. At 2548-49. In addition, Justice Breyer expressly stated that *Booker* applied only "to all cases on direct review." 125 S. Ct. at 769.

Further, all federal courts addressing this same issue of retroactive application have held *Blakely* and *Booker* do not apply retroactively to cases on collateral review. *See, Green v. United States*, 397 F.3d 101 (2nd Cir. 2005); *Guzman v. United States*, 404 F. 3d 139 (2nd Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *McReynolds v. United States*, 397 F. 3d 479 (7th Cir. 2005); *In re Anderson*, 396 F. 3d 1336 (11th Cir. 2005); *Varela v. United States*, 400 F. 3d 864 (11th Cir. 2005); *Tuttamore v. United States*, 2005 WL 234368 (N.D. Ohio, 2005). Accordingly, Glory's claims that *Booker* applies to his sentence and both his counsel were ineffective in this regard are equally without merit.[10] Glory's requests with respect to those claims are denied.

## CONCLUSION

Based on the aforementioned reasoning, this Court finds that Glory's assertions that his sentence is unlawful and was imposed based on an incorrect application of the sentencing guidelines are without merit. In addition, the Court finds that Glory's contentions that his attorneys were ineffective are equally without merit. Counsel is not required to pursue all non-frivolous claims. As a matter of professional judgment, competent counsel may recognize advantage in focusing on central issues rather than pursuing numerous weak ones. *Jones v.*

---

[10] Even if *Booker* could be applied retroactively, the Court notes that the defendant has failed to provide any evidence that his sentence would have been different should the sentencing Judge have known that the guidelines were merely advisory.

*Barnes*, 463 U.S. 745 (1983). After conducting a complete review of the record, the Court finds that neither counsel at sentencing nor on appeal were ineffective for failing to raise the non-meritorious issues addressed by Glory in the instant petition. Accordingly, the Glory's motion for relief pursuant to 28 U.S.C. § 2255 is DENIED.

**IT IS SO ORDERED** this 7th day of July, 2005.

Robert M. Takasugi
United States District Judge

Notice is hereby given that this document was entered on the docket on 7-7-05.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: Marilyn B. Alcon 7-7-05
Deputy Clerk / Date

---

* The Honorable Robert M. Takasugi, United States Senior District Judge for Central California, by designation